**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

AMIR MARDANPOUR,

     Petitioner,

v.

WARDEN, Otero County Processing Center; MARY DE ANDA-YBARRA, Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; TODD LYONS, Acting Director of Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; and ATTORNEY GENERAL of the United States,

     Respondents.

Case No. 2:26-cv-00550-MIS-LF

## ORDER GRANTING PETITION UNDER 28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Amir Mardanpour's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus ("Petition"), ECF No. 1, filed February 23, 2026. The federal Respondents filed a Response on March 11, 2026 ("Response"),[1] ECF No. 6, to which Petitioner filed a Reply on April 6, 2026 ("Reply"), ECF No. 17. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Petition.

---

[1] The Clerk's Office served all Respondents with the Petition pursuant to this District's Standing Order Regarding Service of Process in Immigration Habeas Petitions filed Pursuant to 28 U.S.C. § 2241, Case 1:26-mc-00004, ECF No. 3 (D.N.M. Jan. 28, 2026). ECF No. 3. However, as has become customary in these cases, the Warden did not respond to the Petition.

I.      **Background**

Petitioner is an immigration detainee currently incarcerated at the Otero County Processing Center in Chaparral, New Mexico.  Pet. at 1.  He is a citizen of Iran, where he was a university professor and an architect.  Id. at 5; see also License to Proceed to Engineering Profession, ECF No. 1 at 27.  He illegally entered the United States from Mexico on January 24, 2025.  Form I-213 Record of Deportable/Inadmissible Alien at 2-3, ECF No. 6-1.  The same day, a Border Patrol Agent arrested Petitioner near the San Ysidro Port of Entry and delivered him to the custody of the Department of Homeland Security.  Id. at 2-4.  Petitioner has been continuously detained since he was arrested on January 24, 2025.  Id.; see also Pet. at 3.

After his arrest, Petitioner filed an application for asylum.  See Order of the Immigration Judge at 1, ECF No. 6-2.  On September 26, 2025, an Immigration Judge issued an Order finding that Petitioner is inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), denying Petitioner's claim for asylum, denying Petitioner's claim for withholding of removal under INA § 241(b)(3), and granting Petitioner's claim for withholding of removal under the Convention Against Torture.  Id.  The Immigration Judge found that Petitioner established "it is more likely than not that you will be tortured in **IRAN**[,]" Convention Against Torture Assessment Notice for Alien(s) Whose Entry has Been Suspended and/or Restricted Pursuant to INA §§ 212(f) and 212(a), ECF No. 1 at 16, apparently because Petitioner has converted to Christianity, see Aff. of Behroz Hadji Abedi in Support for Amir Mardanpour, ECF No. 1 at 20 (indicating that "[i]ndividuals who convert from Islam to Christianity face serious persecution from the government of the Islamic Republic of Iran, including harassment, imprisonment, torture, and in some cases, the death penalty").  Petitioner appealed the Immigration Judge's denial of

2

asylum to the Board of Immigration Appeals.  See Pet. at 6; Filing Receipt for Appeal or Motion, ECF No. 1 at 19.  That appeal remains pending.  Pet. at 4.

On February 23, 2026, Petitioner, proceeding pro se, filed the instant Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus.  ECF No. 1.  On March 11, 2026, the federal Respondents filed a Response.  ECF No. 6.  Thereafter, the Court issued an Order appointing Petitioner counsel.  ECF No. 7.  On April 6, 2026, Petitioner, through counsel, filed a Reply.  ECF No. 17.

## II.     Discussion

Petitioner argues that his prolonged detention violates his due process rights under the Fifth Amendment to the United States Constitution.  ECF No. 1 at 3-7.  Because his claim focuses on the length of his detention, the Court construes it as a substantive due process claim.  See Reply at 1 (clarifying that Petitioner is asserting a substantive due process claim).  He argues that he has been continuously detained for more than fourteen months, and his removal is not reasonably imminent because (1) he has appealed the Immigration Judge's Order and (2) the Immigration Judge ordered withholding of removal under the Convention Against Torture.  Pet. at 3-4.  He argues that under these circumstances, his detention has become excessive and is not reasonably connected to any legitimate purpose.  Id. at 4.  He further argues that he is not a flight risk or a danger to the community.  Id. at 5.  Petitioner states that he is willing to comply with any condition of release, including electronic monitoring and regular reporting.  Id.  He asserts that he has a job offer from a construction company, id., and provided a letter from the construction company confirming the job offer, ECF No. 1 at 26.  He also attached to his Petition a letter from a U.S. citizen living in California who has agreed to sponsor Petitioner.  ECF No. 1 at 20.

Respondents argue that Petitioner is an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b)(2).[2]  Resp. at 5-7.  They argue that because Petitioner has appealed the Immigration Judge's Order, "resolution of his removal proceedings is undoubtedly forthcoming." Id. at 6.  They argue that "Petitioner's ample available process in his current removal proceedings demonstrate no lack of Procedural Due Process, nor any deprivation of liberty 'sufficiently outrageous' required to establish a Substantive Due Process claim."  Id.  They argue that a noncitizen seeking initial entry into the United States "has no entitlement to any legal rights, constitutional or otherwise, other than those expressly provided by statute."  Id. at 7 (citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020)).  Finally, Respondents argue that if the Court finds that 8 U.S.C. § 1226 governs Petitioner's detention, the appropriate remedy would be to order a bond hearing in the Immigration Court.  Id. at 8-9.

In his Reply, Petitioner argues that even if Section 1225(b)(2) governs his detention, his ongoing, indefinite detention violates his substantive due process rights.  ECF No. 17 at 2-5 (citing, e.g., Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1385-90 (10th Cir. 1981); Singh v. Noem, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *39 (D.N.M. Jan. 20, 2026)).  He argues that the

---

[2]        Although Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), they also assert that on March 10, 2026—the day before Respondents filed their Response—Petitioner received a bond hearing. Resp. at 2 n.1.  They assert: "According to information received from U.S. Immigration and Customs Enforcement Office of the Principal Legal Advisor, the order from the hearing was not immediately available, but it is believed that the Immigration Judge found he had no jurisdiction over the bond hearing and that both parties waived appeal of the decision. Respondents will provide this order to the Court when it is received if the petition remains pending."  Id.  To date, Respondents have not filed any such order.

In his Reply, Petitioner argues that providing Petitioner a bond hearing is inconsistent with Respondents' position that he is properly classified under Section 1225(b)(2) and therefore subject to mandatory detention.  Reply at 9 ("Respondents have failed to explain why, if § 1225(b)(2) applies to Petitioner and mandates detention without a bond hearing, Petitioner received a bond hearing at all.").  Petitioner attached a Declaration to his Reply summarizing the bond hearing.  ECF No. 17-1.  Petitioner argues that the hearing was not constitutionally adequate for several reasons, Reply at 10, and does not moot his substantive due process claim, id. at 11.

Whether Petitioner received a bond hearing is immaterial to the Court's disposition on Petitioner's substantive due process claim.

U.S. cannot remove him to Iran and Respondents have provided no evidence of efforts to remove him to a third country.  Id. at 4.  He argues that

> [t]he punitive nature of Petitioner's prolonged and indefinite detention is underscored by the fact that, although release is routinely granted following an award of withholding of removal under CAT,[3] Respondents' only apparent justification for continued detention is that Petitioner has chosen to exercise his right to appeal and pursue a meritorious asylum claim. But exercising the right to appeal should not require surrendering one's physical liberty as collateral. "[S]uch imprisonment is impermissible punishment rather than detention pending deportation." See Rodriguez-Fernandez, 654 F.2d at 1387. Detaining Petitioner solely because he seeks to exhaust his right to an appeal is not a legitimate regulatory measure—it is punishment in violation of his substantive due process rights.

Id. at 4-5 (footnote in original); see also id. at 6-9 (arguing that Petitioner's detention is punitive and no longer serves a removal purpose).  Petitioner further argues that Thuraissigiam does not bar his substantive due process claim, as that case dealt only with procedural rights.  Id. at 5-6.  He argues that because his detention is punitive and no longer serves a removal purpose, the Court should order his conditional release.  Id. at 12.

"Substantive due process analysis must begin with a careful description of the asserted right."  Reno v. Flores, 507 U.S. 292, 302 (1993) (internal quotation marks omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—

---

[3]    The Court should take judicial notice that for many years, it has been the United States Immigration and Custom Enforcement's ("ICE") policy to favor release of noncitizens granted relief from removal, including grants of withholding of removal and CAT relief. See Austin Rose, Continued Detention of Noncitizens Who Win Immigration Relief, AMICA: CENTER FOR IMMIGRANT RIGHTS, https://amicacenter.org/app/uploads/2024/07/Continued-Detention-Brief-Amica-Version.pdf (last visited Apr. 6, 2026) ("There have been four iterations of ICE's policy since 2000, each time reiterating and elaborating on a policy favoring release of noncitizens granted relief from removal, including those with final grants of withholding of removal and CAT relief."); NATIONAL IMMIGRATION PROJECT, https://nipnlg.org/sites/default/files/2024-07/all_ice_policies_on_post-relief_release.pdf (showcasing such policies). This Court has previously taken judicial notice of government material. See, e.g., Tenorio v. Gerlach, No. 18-0240 JB/CG, 2020 WL 1308648, at *1 (D.N.M. Mar. 19, 2020) (observing other cases where judicial notice was appropriate for state and federal agency websites).

lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "In order to determine Petitioner's liberty interest, however, the Court first determines Petitioner's legal status in the United States as well as the statutory and regulatory framework that authorizes Petitioner's detention." Maldonado v. Macias, 150 F. Supp. 3d 788, 796 (W.D. Tex. 2015).

Because Petitioner does not argue that his detention is governed by 8 U.S.C. § 1226 (or any other statute), the Court will assume without deciding that Respondents are correct that Petitioner is an "arriving alien" whose detention is governed by Section 1225(b)(2). See St. Charles v. Barr, 514 F. Supp. 3d 570, 576 (W.D.N.Y. 2021) ("[Noncitizens] who unlawfully enter the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as 'arriving aliens' under the current statutory and regulatory scheme.") (citing Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004)).

> According to the statute, arriving aliens are subject to expedited removal and are not entitled to a hearing or appeal on this decision. 8 C.F.R. § 1235.3(b)(1)(i), (b)(2)(ii). Generally, aliens subject to expedited removal are to be removed immediately, but arriving aliens who express an intention to apply for asylum or a fear of persecution are referred to an asylum officer for a credible fear interview. 8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B)(i). If the alien is found to have a "credible fear of persecution," the alien remains detained, subject to the parole provisions for arriving aliens . . . , pending consideration of the asylum application. 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum."); 8 U.S.C. § 1182(d)(5)(A) (explaining that the Attorney General may grant parole "for urgent humanitarian reasons or significant public benefit"). Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings,[4] rather than the expedited removal proceedings described above, for a determination of the asylum claim. See 8 C.F.R. § 1235.6(a)(1)(ii); see also 8 C.F.R. § 1208.30(g)(2)(iv)(B) (explaining that, when a negative credible fear finding by an asylum officer is reversed by an

---

[4]    "Section 240 removal proceedings" are removal proceedings conducted by an immigration judge. See 8 U.S.C § 1229a(1) ("An immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."). "Section 240" refers to § 240 of the Immigration and Nationality Act, which is codified in 8 U.S.C. § 1229.

immigration judge, the Government, "may commence removal proceedings under section 240 of the Act, during which time the alien may file an application for asylum and withholding of removal"); In Re X–K–, 23 I. & N. Dec. 731, 734 (BIA 2005) ("The requirement that aliens who had initially been screened for expedited removal be placed in full section 240 removal proceedings after a final positive credible fear determination is clearly stated in the regulations.").

Pursuant to 8 U.S.C. § 1225(b)(2)(A), arriving aliens—including those with a positive credible fear determination—are to be detained unless one of the limited statutory exceptions applies, allowing the Government to release the alien on parole. Rodriguez v. Robbins, 715 F.3d 1127, 1132 (9th Cir. 2013) ("Rodriguez I") ("Although Section 1225(b) generally mandates the detention of aliens seeking admission pending their removal proceedings, individuals detained under the statute may be eligible for discretionary parole from ICE custody."); see also 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."); 8 C.F.R. § 1235.3(c) ("Except as otherwise provided in this chapter, any arriving alien who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to section 240 of the Act shall be detained in accordance with section 235(b) of the Act."); Clark, 543 U.S. at 373, 125 S.Ct. 716 (explaining that the detention of an "alien arriving in the United States" is "subject to the Secretary's discretionary authority to parole him into the country"). The Attorney General can temporarily parole an alien who is applying for admission to the United States "for urgent humanitarian reasons or significant public benefit," "to meet a medical emergency[,] or . . . for a legitimate law enforcement objective." 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1235.3(b)(2)(iii). Whether the Government decides to parole an arriving alien or keep him detained, the regulations state that an immigration judge does not have authority to review the custody determination. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens: . . . (B) Arriving aliens in removal proceedings, including aliens paroled after arrival pursuant to section 212(d)(5) of the Act . . . ."); see also In Re X–K–, 23 I. & N. Dec. at 732 ("There is no question that Immigration Judges lack [custody] jurisdiction over arriving aliens who have been placed in section 240 removal proceedings, because they are specifically listed at 8 C.F.R. § 1003.19(h)(2)(i)(B) as one of the excluded categories."). Thus, unless an arriving alien asylum applicant is granted parole, he will remain in detention pending the grant or denial of his asylum application. See 8 U.S.C. § 1225(b)(2)(A).

Maldonado, 150 F. Supp. 3d at 797-98 (footnote in original).

In Jennings v. Rodriguez, the Supreme Court held that, as a matter of statutory interpretation, 8 U.S.C. §§ 1225(b) and 1226(c) "mandate detention of aliens throughout the completion of applicable proceedings . . . ." 583 U.S. 281, 302, 305-06 (2018). In doing so, it rejected the Ninth Circuit's conclusion that Sections 1225(b) and 1226(c) impose an implicit six-month limit on an alien's detention, after which they are entitled to a bond hearing. See id. at 291-92, 296-97. However, the Court explicitly declined to consider whether mandatory detention under Sections 1225(b) and 1226(c) is subject to constitutional limitations. See id. at 312.

The Tenth Circuit has recognized that inadmissible aliens in physical custody in the United States enjoy some procedural and substantive due process protections under the Fifth Amendment. See Rodriguez-Fernandez v. Wilkinson, 654 F.2d 1382, 1387 (10th Cir. 1981). In Rodriguez-Fernandez, a Cuban national arrived in the United States and was detained pending an exclusion hearing pursuant to 8 U.S.C. §§ 1182(a)(9), (20) and 1225(b). 654 F.2d at 1384. An immigration official determined that, due to his criminal record in Cuba and lack of immigration documents, Rodriguez-Fernandez was an excludable alien and ordered him deported to Cuba. Id. However, Cuba would not accept him back, id., and the Attorney General ordered his continued detention at a federal penitentiary, id. Thereafter, Rodriguez-Fernandez filed a petition for writ of habeas corpus; the district court granted the petition and ordered his immediate release. Id. at 1384-85. The respondents appealed and the Tenth Circuit affirmed. Id. at 1386. Although the court decided the issue "by construing the applicable statutes to require Rodriguez-Fernandez' release at this time[,]" id. it addressed certain constitutional questions relevant to the instant case, see id. at 1386-87. Specifically, the court opined that

> an excluded alien in physical custody within the United States may not be "punished" without being accorded the substantive and procedural due process

8

guarantees of the Fifth Amendment.[5] Surely Congress could not order the killing of Rodriguez-Fernandez and others in his status on the ground that Cuba would not take them back and this country does not want them. Even petitioner's property cannot be taken without just compensation, absent the existence of a state of war between the United States and his country. Russian Volunteer Fleet v. United States, 282 U.S. 481, 51 S.Ct. 229, 75 L.Ed. 473 (1931). Certainly imprisonment in a federal prison of one who has been neither charged nor convicted of a criminal offense is a deprivation of liberty in violation of the Fifth Amendment, except for the fiction applied to these cases that detention is only a continuation of the exclusion. This euphemistic fiction was created to accommodate the necessary detention of excludable and deportable aliens while their cases are considered and arrangements for expulsion are made. See Carlson v. Landon, 342 U.S. 524, 538, 72 S.Ct. 525, 533, 96 L.Ed. 547 (1952).[6] Detention pending deportation seems properly analogized to incarceration pending trial or other disposition of a criminal charge, and is, thus, justifiable only as a necessary, temporary measure. Obviously detention pending trial assumes a different status if there is to be no trial. If, in this case, administrative officials ordered penitentiary confinement for life or a definite term because Cuba would not accept petitioner, it seems certain the courts would apply [Wong Wing v. United States, 163 U.S. 228 (1896)] and hold that such imprisonment is impermissible punishment rather than detention pending deportation. Logic compels the same result when imprisonment is for an indefinite period, continued beyond reasonable efforts to expel the alien.

Federal circuit and district courts have long held deportable aliens in custody more than a few months must be released because such detention has become imprisonment. See Petition of Brooks, 5 F.2d 238, 239 (D.Mass.1925), which declared,

> "The right to arrest and hold or imprison an alien is nothing but a necessary incident of the right to exclude or deport. There is no power in this court or in any other tribunal in this country to hold indefinitely any sane citizen or alien in imprisonment, except as a punishment for crime. Slavery was abolished by the Thirteenth Amendment. It is elementary that deportation or exclusion proceedings are not punishment for crime . . . . He is entitled to be deported, or to have his freedom. He has already been imprisoned,

---

[5]   We agree with United States v. Henry, 604 F.2d 908 (5th Cir. 1979), that no distinction can be drawn in application of these rules between an alien, like Rodriguez-Fernandez, who is regarded as standing at the border and one who is a resident in the United States. See also United States v. Casimiro-Benitez, 533 F.2d 1121 (9th Cir.), cert. denied, 429 U.S. 926, 97 S.Ct. 329, 50 L.Ed.2d 295 (1976).

[6]   The Court pointed out, however, that this case did not involve unusual delay in deportation. 342 U.S. at 546, 72 S.Ct. at 537.

for no crime, about nine weeks, for which he is apparently without remedy."

In <u>United States ex rel. Ross v. Wallis</u>, 279 F. 401, 403-404 (2d Cir. 1922), the court said,

"We now take cognizance of the fact that peace has been declared, and regular communication with the British Isles re-established, and we therefore express our opinion that unless this relator, or any other person similarly situated, be actually deported within four months after such alien has exhausted his legal remedies, any further or other detention under pretense of awaiting opportunity for deportation would amount, and will amount, to an unlawful imprisonment, from which relief may be afforded by a new habeas corpus."

See also <u>Wolck v. Weedin</u>, 58 F.2d 928, 930-931 (9th Cir. 1932); <u>Caranica v. Nagle</u>, 28 F.2d 955, 957 (9th Cir.), <u>cert. denied</u>, 277 U.S. 589, 48 S.Ct. 437, 72 L.Ed. 1002 (1928); <u>United States ex rel. Janavaris v. Nicolls</u>, 47 F.Supp. 201 (D.Mass.1942).

<u>Id.</u> at 1387-88 (footnotes in original). Ultimately, the Tenth Circuit held, as a matter of statutory construction,

that detention is permissible during proceedings to determine eligibility to enter and, thereafter, during a reasonable period of negotiations for their return to the country of origin or to the transporter that brought them here. After such a time, upon application of the incarcerated alien willing to risk the possible alternatives to continued detention, the alien would be entitled to release. This construction is consistent with accepted international law principles that individuals are entitled to be free of arbitrary imprisonment. It is also consistent with the statutory treatment of deportable resident aliens and with the constitutional principles outlined above.

<u>Id.</u> at 1389-90.

Thus, although the Tenth Circuit's analysis of the relevant substantive due process issues in <u>Rodriguez-Fernandez</u> is arguably dicta (because the case was decided as a matter of statutory construction), the Court finds it persuasive and adopts it. <u>See</u> <u>Singh</u>, 2026 WL 146005, at *39 (D.N.M. Jan. 20, 2026) (concluding that under <u>Rodriguez-Fernandez</u> a habeas petitioner "has substantive due process protections that extend beyond § 1225's protections"). The Court finds

10

that Petitioner, an "arriving alien" subject to detention under 8 U.S.C. § 1225(b)(2), may not be "punished" without being accorded the substantive and procedural due process guarantees of the Fifth Amendment. Rodriguez-Fernandez, 654 F.2d at 1387.

"A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) the restriction is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose." Singh, 2026 WL 146005, at *39 (citing United States v. Salerno, 481 U.S. 739, 747 (1987); Kingsley v. Henderson, 576 U.S. 389, 398 (2015)). Here, the Court finds that Petitioner's indefinite detention—which exceeds fourteen months to date, with no reasonably foreseeable end in sight—is constitutionally excessive in relation to the Government's legitimate, nonpunitive purpose of facilitating removal. Petitioner's appeal to the BIA and, if unsuccessful there, to the Tenth Circuit Court of Appeals, could take years. Moreover, the Immigration Judge ordered withholding of removal under the Convention Against Torture, meaning Petitioner cannot be removed to Iran. And Respondents have presented no evidence or argument that they are pursuing removal to a third country. Under these circumstances, Petitioner's indefinite, ongoing detention exceeding fourteen months is punitive and therefore a violation of Petitioner's Fifth Amendment substantive due process rights. Rodriguez-Fernandez, 654 F.2d at 1387 (finding that indefinite detention, "continued beyond reasonable efforts to expel the alien[,]" constitutes punishment in violation of the Fifth Amendment).

The Court's conclusion is supported by the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), and the Sixth Circuit's decision in Rosales-Garcia v. Holland, 322 F.3d 386 (6th Cir. 2003). In Zadvydas, the Court suggested that the indefinite detention of "aliens who were

11

admitted to the United States but subsequently ordered removed" would be unconstitutional.[7] 533 U.S. at 682. It observed that civil detention is constitutionally permissible only "in certain special and narrow non-punitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (citation modified). It rejected the Government's argument that detention was proper to (1) ensure the appearance of aliens at future immigration proceedings and (2) prevent danger to the community. Id. at 690-92 (finding that the flight prevention justification was "weak or nonexistent where removal seems a remote possibility at best," and the dangerousness justification could not be supported by alien status alone). Ultimately, "to avoid a serious constitutional threat[,]" id. at 699, the Court read an "implicit limitation" on the length of an alien's detention into 8 U.S.C. § 1231(a)(6), id. at 682, 689. Specifically, the Court determined that a six-month detention period is presumptively reasonable. Id. at 701. "After this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. However, the Court did not answer whether the same rule applies to "arriving aliens" subject to mandatory detention under Section 1225(b)(2)(A). See id.

In Rosales-Garcia, the Sixth Circuit extended Zadvydas to excludable aliens[8]—specifically, Cubans (Rosales and Carballo) who had been paroled into the United States and

---

[7]    Zadvydas involved two resident aliens who had been ordered removed from the U.S. for committing deportable crimes. Petitioner Zadvydas was born "in a displaced persons camp in Germany in 1948" to Lithuanian parents. 533 U.S. at 684. He was ordered deported to Germany in 1994, but Germany would not accept him because he was not a German citizen, and Lithuania refused to accept him because he was not a Lithuanian citizen or permanent resident. Id. Petitioner Ma was born in Cambodia in 1977. Id. at 685. He was ordered removed in the 1990s, but the U.S. has no repatriation treaty with Cambodia. Id. at 685-86.

[8]    "Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009–546, aliens ineligible to enter the country were denominated 'excludable' and ordered 'deported.' 8 U.S.C. §§ 1182(a), 1251(a)(1)(A) (1994 ed.); see Landon v. Plasencia, 459 U.S. 21, 25–26, 103 S.Ct.

subsequently ordered removed after committing crimes, but faced indefinite detention because Cuba refused to allow them to return.  322 F.3d at 410-11.  It found that the petitioners' status as excludable aliens did not alter Zadvydas's analysis:

> An excludable alien who cannot be removed to his country of origin presents no greater risk of flight than the aliens who could not be removed to their countries of origin in Zadvydas; nor does an excludable alien's status relate any more to his dangerousness than the removable status of the aliens in Zadvydas related to their dangerousness.

Id. at 411.  It further reasoned:

> The Supreme Court in Zadvydas concluded that "for the reasons we have set forth, we believe that an alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." Zadvydas, 533 U.S. at 696, 121 S.Ct. 2491. We draw the same conclusion with regard to excludable aliens. If the Due Process Clause of the Fifth Amendment applies to Rosales and Carballo, as we believe that it must, we do not see how we could conclude that the indefinite and potentially permanent detention of Rosales and Carballo raises any less serious constitutional concerns than the indefinite and potentially permanent detention of the aliens in Zadvydas. We emphasize that we understand that this situation, involving criminal aliens whose removal cannot be effected, is a difficult one: we, too, find it unpalatable that inadmissible aliens who have previously abused the privilege of immigration parole should be permitted additional opportunities to live in this country simply because their country of origin will not have them back. As the Zadvydas Court explained, though, "[t]he choice . . . is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." Id. Moreover, we find it not only unpalatable but also untenable to conclude that under the Due Process Clause of the Fifth Amendment persons living in the United States— whether by our choice or not—could be subjected to a life sentence in prison simply because their country of origin will not have them back. A life sentence in prison, in fact, seems to us no less impermissible than the government's torture or summary execution of these aliens.

Id. at 412-13 (footnote omitted).

---

321, 74 L.Ed.2d 21 (1982). Post–IIRIRA, such aliens are said to be 'inadmissible' and held to be 'removable.' 8 U.S.C. §§ 1182(a), 1229a(e)(2) (2000 ed.)."  Clark v. Martinez, 543 U.S. 371, 375 n.2 (2005).

The Court finds that the same reasoning applies to "arriving aliens" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  If the Fifth Amendment prohibits "indefinite and potentially permanent detention" of "criminal aliens," as in Rosales-Garcia, and resident aliens with lengthy criminal histories, as in Zadvydas, it must prohibit indefinite and potentially permanent detention of a noncriminal arriving alien—here, a university professor and architect. See Maldonado, 150 F. Supp. 3d at 804-05 (concluding that detention under Section 1225(b) is subject to a reasonable time limitation) (collecting cases).

Based on the foregoing, the Court finds that under the facts of this case, Petitioner's indefinite, ongoing detention (now exceeding fourteen months), with no reasonably foreseeable end in sight, violates Petitioner's substantive due process rights under the Fifth Amendment to the U.S. Constitution.  See Rodriguez-Fernandez, 654 F.2d at 1387-90; Rosales-Garcia, 322 F.3d at 411-13.

Upon finding a person is "in custody in violation of the Constitution or laws or treaties of the United States[,]" 28 U.S.C. § 2241(c), a district court may grant a writ of habeas corpus and "dispose of the matter as law and justice so require[,]" 28 U.S.C. §§ 2241(a), 2243.  The "typical remedy" for "unlawful executive detention" is release from custody.  Munaf v. Geren, 553 U.S. 674, 693 (2008); see also Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The Court finds that immediate conditional release is the appropriate remedy.  See Boumediene v. Bush, 553 U.S. 723, 779 (2008) ("[T]he habeas court must have the power to order the conditional  release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.").

IV.    **Conclusion**

Therefore, it is **HEREBY ORDERED** that:

14

1.     Petitioner Amir Mardanpour's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

2.     Respondents are **ORDERED** to immediately release Petitioner from detention, subject to reasonable conditions of release, such as electronic monitoring and/or regular check-ins;

3.     Respondents are **ENJOINED** from re-detaining Petitioner absent (1) evidence that Petitioner has committed a crime or absconded in his administrative immigration proceedings, or (2) a valid final order of removal to a third country that has agreed to accept Petitioner, and concrete travel plans to deliver Petitioner to that third country; and

4.     The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE